## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY
378 N. Main Avenue
Tucson, AZ 85701,

ENVIRONMENTAL INTEGRITY
PROJECT
1000 Vermont Ave, NW
Suite 1100
Washington, DC 20005,

            Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY
1200 Pennsylvania Ave NW,
Washington, DC 20004,

            Defendant.

Civil Action No.: 19-cv-2198

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      In this action, Plaintiffs the Center for Biological Diversity ("Center") and

Environmental Integrity Project ("EIP") – nonprofit organizations that advocate for

environmental protection, enforcement of environmental and administrative laws, and

government transparency – challenge Defendant U.S. Environmental Protection Agency's

("EPA") final rule, 84 Fed. Reg. 30,028 (June 26, 2019) ("FOIA Rule"), a sweeping overhaul of

the agency's rules governing its process for responding to records requests under the Freedom of

Information Act, 5 U.S.C. § 552, *as amended* ("FOIA") that EPA quietly adopted without

adhering to the rulemaking procedures required by FOIA and administrative law.

2.      EPA's FOIA Rule violates FOIA by granting political appointees the ability to

deny FOIA requests, including on the basis of specific records' "responsiveness," and by

instituting practices that significantly delay EPA's response to FOIA requests, in violation of the

Administrative Procedure Act, 5 U.S.C. § 553, *as amended* ("APA").  EPA's publication of its

FOIA Rule without notice and comment also violates the APA's required rulemaking

procedures.

3.      Plaintiffs also challenge EPA's adoption of FOIA directives, which are

substantive rules of general applicability governing EPA's FOIA practices, but which have never

been published in the Federal Register or subjected to public comment in violation of the

procedural rulemaking requirements of both FOIA and the APA.  *Id.* § 552(a)(1)(D), (a)(2)(b);

*id.* § 553(b)-(c).  These secretly adopted FOIA directives institutionalize procedures and

practices that serve to delay and often frustrate public access to public records by allowing EPA

political appointees to oversee what information is made available to the public, and what

information never sees the light of day.

4.      Hence, to defend this bald attempt by EPA political appointees to obfuscate the

important work that its staff scientists and analysts do to keep communities healthy, Plaintiffs

challenge EPA's violations of the rulemaking and procedural requirements of FOIA and the

APA, as well as EPA's unlawful pattern, policy, and/or practice of implementing substantive

FOIA rules that have never been subject to notice-and-comment but rather set forth in internal

documents and/or oral directives, which themselves may never see the light of day under these

secret policies.

5.      Government transparency is essential to modern democracy. Congress enacted

FOIA to provide the public with the right to federal agency records that illuminate government

actions and empower the public to hold agencies accountable.

6.     EPA's internal FOIA practices have long been known by this Court to cause
problematic delays in compliance with FOIA, *see Landmark*, *Legal Found. v. Envtl. Prot.
Agency*, 82 F. Supp. 3d 211, 213 (D.D.C. 2015) (admonishing EPA for repeated FOIA
violations), but in 2017, EPA quietly began implementing new policies and practices that are
apparently *designed* to skirt FOIA's requirements.  Some of these practices include (but are not
limited to) refusing to conduct adequate searches to locate records that are responsive to FOIA
requests, overbroadly applying FOIA exemptions to withhold and redact records, and
significantly delaying final determinations and production of records.

7.     Immediately upon hearing about these new internal EPA directives for processing
FOIA requests, the Center submitted requests evidencing "any directives that address how EPA
processes and responds to FOIA requests and appeals."  However, due to the agency's
intransigent refusal to release records about its FOIA directives—records which might illuminate
any legitimate policy objective or basis for EPA's new policies—the Center filed a complaint
against EPA in March 2019, challenging EPA's FOIA violations.  Complaint, 1, *Ctr. for
Biological Diversity v. U.S. Envtl. Prot. Agency*, No 1:19-cv-00688 (D.D.C. 2019) [hereinafter
*Center's FOIA Action*].

8.     Upon information and belief, EPA's significant delay in responding to the
Center's FOIA requests at issue in *Center's FOIA Action* is a direct result of EPA's
implementation of these internal written and oral directives and its FOIA Rule, all adopted
without notice and comment.  EPA has committed and continues to implement unlawful pattern,
policy/policies, and/or practice(s) of delaying production of records and even preventing the
public release of records altogether.

3

9.      EPA published its FOIA Rule in the Federal Register on June 26, 2019, invoking both the "procedural exception" and the "good cause" exception to the APA's notice-and-comment requirement. *Id.* § 553(b)(3)(A). Suspiciously, EPA has relied on this good-cause exception to avoid APA notice-and-comment rulemaking 16 times in the last 12 months for a variety of rule amendments, making EPA's FOIA Rule the 17th use of this exception in a year.

10.      Providing meaningful opportunity for the Plaintiffs and the public to comment on EPA's FOIA Rule as well as any other unpublished FOIA directives is necessary to effectuate FOIA's purpose of transparency. Thus, Plaintiffs also seek from this Court declaratory relief establishing that EPA violated the procedural requirements of FOIA and the APA.

11.      To remedy these violations, Plaintiffs seek a Court order: declaring EPA's FOIA Rule and its internal written and oral FOIA directives to be substantive regulations that have been secretly and unlawfully adopted without notice and comment, in violation of FOIA and the APA; vacating the directives and Rule; and enjoining EPA from implementing them unless it complies with the notice-and-comment requirements of FOIA and the APA. Plaintiffs also seek injunctive relief directing EPA to hold a 30-day notice-and-comment period to allow Plaintiffs and other interested parties to submit written comment on any proposed changes to EPA's rules implementing FOIA, and to publish a new final rule after the notice-and-comment period closes that addresses and incorporates the feedback EPA receives from public comment.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 706, 28 U.S.C. § 1331.

13.      Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 706, and 28 U.S.C. § 1391(e).

14.     Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 706 and 28 U.S.C. § 2202.

15.     Declaratory relief is appropriate under *Id.* § 2201.

## PARTIES

16.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit environmental conservation organization with offices throughout the United States.  The Center has more than 65,500 members.  EPA has harmed the Center through its violations of FOIA and the APA, which prevent the Center from gaining information about EPA's adoption of unpublished-yet-substantive agency rules that are currently governing how EPA responds to FOIA requests.  The Center currently has at least 78 pending FOIA requests to EPA seeking records that inform the Center's advancement of its mission to advocate for imperiled species and their habitats, and the Center will submit more records requests to EPA in the future.  EPA's failure to comply with FOIA and the APA impair the Center's ability to provide full, accurate, and current information to its members and the public regarding important matters of great public interest.  EPA's adoption of its FOIA Rule and unpublished FOIA directives, without providing notice or an opportunity for the Center and other interested parties to comment, impairs the Center's right to obtain agency records from EPA under FOIA, and impairs the Center's ability to advance its mission to protect native species and their habitat.

17.     Plaintiff ENVIRONMENTAL INTEGRITY PROJECT is a national nonprofit organization organized under the laws of the District of Columbia.  EIP is dedicated to advocating for more effective enforcement of environmental laws.  EIP has three primary goals: (1) to provide objective analyses of how the failure to enforce or implement environmental laws increases pollution and affects public health; (2) to hold federal and state agencies, as well as

individual corporations, accountable for failing to enforce or comply with environmental laws; and (3) to help local communities obtain the protection of environmental laws. To achieve its mission, EIP submits FOIA requests for records regarding EPA agency matters, such as compliance assurance, enforcement, and EPA rulemaking and policy. EPA's adoption of the FOIA Rule and other unpublished rules and policies without notice and comment circumvents the ability of EIP to inform its members and the public to provide meaningful input and objections regarding the Rule, harms EIP's ability to obtain agency records from EPA under FOIA, and impairs EIP's ability to carry out its mission.

18.     Defendant, U.S. ENVIRONMENTAL PROTECTION AGENCY is an independent agency of the U.S. Government. EPA is the federal agency responsible for applying and implementing the federal laws and regulations at issue in this complaint. EPA's adoption of various unpublished FOIA directives and its enactment of the FOIA Rule without notice and comment has injured Plaintiffs' right to informed decision-making and full disclosure under FOIA and the APA, as well as its ability to meaningfully participate in this and other EPA decision-making processes. EPA's unlawful patterns, policies, and/or practices are harming Plaintiffs' ability to obtain public records under FOIA. EPA is responsible for managing records and communicating with the public and interested parties using transparent communication and policies, and as such, it is subject to the APA pursuant to 5 U.S.C. § 553(a)(2).

## STATUTORY BACKGROUND

I.     Freedom of Information Act

19.     FOIA's basic purpose is for government transparency.

20.     FOIA requires each agency to release records to the public upon request unless one or more statutory exemptions applies. *Id.* § 552(b)(1)-(9).

21.     Within 20 working days of receiving a FOIA request, an agency must determine if it will release requested records and notify the requester of its determination and the reasons therefor, the right to seek assistance from the FOIA Public Liaison, and the right to appeal an adverse agency determination.  *Id.* § 552(a)(6)(A)(i).

22.     Only in "unusual circumstances" may an agency extend the time to make a final determination by no more than 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances and "the date on which a determination is expected to be dispatched."  *Id.* § 552(a)(6)(A)(i).

23.     FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *Id.* § 552(a)(3)(C)-(D).

24.     After providing a determination to the requester, FOIA requires the agency to promptly provide the requester records responsive to the FOIA request, which are not subject to any of FOIA's exemptions, without undue or significant delay.  *Id.* § 552(b)(1)-(9), (a)(6)(C)(ii).

25.     FOIA requires agencies to publish in the Federal Register all "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretation of general applicability formulated and adopted by the agency." *Id.* § 552(a)(1)(D).

26.     FOIA requires each agency to make available for public inspection in an electronic format any "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."  *Id.* § 552(a)(2)(B).

27.     FOIA provides this Court jurisdiction to enjoin each agency from adopting policies that prevent the agency from responding to FOIA requests within a reasonable time and, therefore, are policies that cause significant or undue delay.  *Id.* § 552 (a)(4)(B).

II.     Administrative Procedure Act

28.     The APA requires each agency to publish a proposed rule in the Federal Register

and hold a 30-day notice-and-comment period for interested parties to provide feedback, before

publishing the final rule that incorporates or addresses the comments the agency receives during

the comment period, unless a statutory exception applies.  *Id.* § 553(b)-(c).

29.     The APA requires each final rule that an agency publishes to be the "logical

outgrowth" from the agency's proposed rule, *See Select Specialty Hosp.-Akron, LLC v. Sebelius*,

820 F. Supp. 2d 13, 23 (D.D.C. 2011) (quoting *Health Ins. Ass'n of Am. v. Shalala*, 23 F.3d 412,

421 (D.C. Cir. 1994)), and the feedback it receives from interested parties during the 30-day

notice-and-comment period. *Id.* § 553(c).

30.     Federal agencies may not use their authority and discretion to publish any rule

that goes beyond the text of the underlying statute without providing interested parties with an

opportunity to provide feedback through notice-and-comment.  *See id.* § 706(2)(C).

31.     The APA requires each agency to publish any rule and allow interested parties

time to comment if the agency makes substantive changes to the rule.  *Id.* § 553(d).  To

determine whether an agency's rule changes are substantive depends on (1) whether the rule

provides a legislative basis for enforcement or other agency action; (2) whether the agency

published the rule in the Code of Federal Regulations; (3) whether the agency explicitly invoked

its general legislative authority; or (4) whether the rule effectively amends a legislative rule.

32.     The APA allows an agency to forgo notice of proposed rulemaking and public

comment only if the agency finds, for good cause, "that notice and public procedure thereon are

impracticable, unnecessary, or contrary to the public interest," and makes this "finding and a

brief statement of the reasons" when attempting to invoke the exception. *Id.* § 553(b)(1)(B). The "good cause exception" is to be narrowly construed and may only rarely be applied.

33.     The APA requires a court to "set aside" or vacate agency rules that are "without observance of procedure required by law," including rules unlawfully published without a 30-day notice-and-comment period when the agency does not have valid justification for invoking the good cause exception, *id.* § 706(2)(D), and to set aside final agency action—including adoption of rules—that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* § 706(2)(A).

## FACTUAL BACKGROUND

II.     <u>EPA's Administrator's Office FOIA Centralization Pilot Project and FOIA Queue</u>

34.     Years ago, this Court admonished EPA for implementing internal directives that create significant delays in the agency's searches and releases of records in response to FOIA requests. *See, e.g., Landmark*, *Legal Found.*, 82 F. Supp. 3d at 221.

35.     On July 24, 2017, in an internal memo not published in the Federal Register, EPA's Chief of Staff Ryan Jackson instructed agency staff to adopt the Administrator's Office ("AO") "FOIA Centralization Pilot Project," which involved a queue system to organize pending FOIA requests.

36.     As stated in its Fiscal Year 2019 Chief FOIA Officer Report (hereinafter "Chief FOIA Officer Report"), the AO FOIA Centralization Pilot Project has been operational since at least April 31, 2018.  U.S. Envtl. Protection Agency, U.S. Envtl. Protection Agency Chief FOIA Officer Report Fiscal Year 2019 (2019).

37.     The Chief FOIA Officer Report also states that EPA sent more than 1,300 letters to requestors for more than 1,400 backlogged FOIA requests, which informed the requestors of their pending FOIA requests' tracking numbers and positions in the agency's FOIA queue. *Id.*

38.     On July 24, 2017, EPA initiated the FOIA Expert Assistance Team ("FEAT") of the AO FOIA Centralization Pilot Project, to oversee FOIA requests and develop strategies to direct staff on how to process requests and review associated records.

39.     As of the date of this complaint, EPA has not made available for public inspection any "statements of policy or interpretations which have been adopted by the agency" regarding implementation of its AO FOIA Centralization Pilot Project, its FOIA queue, or of the FEAT, in the Federal Register or by other electronic means, as is required by 5 U.S.C. § 552(a)(2)(B).

III.     EPA's Internal Awareness Notification Process Memorandum

40.     According to public records and statements from former and current EPA staff, starting under former Administrator Scott Pruitt, EPA implemented FOIA policies or practices with the purpose of "intentionally delaying the release of documents under FOIA relating to [Pruitt's] tenure at EPA." *See* Letter from Ranking Member Elijah E. Cummings to EPA Administrator Scott Pruitt (June 11, 2018).  The political "awareness review" process specifically required FOIA staff to allow senior political appointees an opportunity to review and approve all FOIA responses processed by the EPA Office of the Administrator ("AO").

41.     On August 21, 2018, EIP filed a lawsuit alleging, in part, that EPA had implemented a "political awareness review" and that this "review" was an illegal policy or practice under FOIA, and specifically requested that the Court declare EPA's political awareness review to be an impermissible FOIA policy or practice, and to enjoin EPA from its continued use of this policy or practice.

42.     On November 16, 2018, Ryan Jackson sent a memorandum to EPA leadership regarding EPA's new "Awareness Notification Process," which is "intended to inform senior officials of the release of information through FOIA that may be of particular interest to the press, the public and/or Congress."  Memorandum from Chief of Staff Ryan Jackson to General Counsel et al., (Nov. 16, 2018) [hereinafter "Awareness Notification Memo"].  According to this internal memorandum, the Awareness Notification Process "controls and supersedes" any of EPA's formal and informal processes that are inconsistent with the new policy.  *Id.*

43.     In its Reply in support of its Motion to Dismiss EIP's policy or practice claim, EPA argued, for the first time, that Plaintiffs' policy or practice claim should be dismissed as moot in light of the November 16, 2018 Awareness Notification Process memorandum superseding any prior awareness reviews.  EPA attached the memorandum to its Reply brief.  This was the first time EIP learned of this new policy.

44.     Shortly thereafter, in late 2018, the Center learned of EPA's Awareness Notification Process, which grants the Director of the Office of Executive Secretariat, the Associate Administrator for the Office of Public Affairs, and the Associate Administrator for the Office of Congressional and Intergovernmental Relations (*collectively* "Political Appointees") the authority to review records responsive to FOIA requests before EPA produces those records to the FOIA requester—*i.e.*, frequently before the records are made public.

45.     EPA's decision to allow Political Appointees to select and review records in responding to FOIA requests inserts political meddling into EPA's FOIA process on a scale that may be unprecedented, even for EPA.  Upon information and belief, never before has an agency adopted official (unpublished) policy directing its staff *to allow political appointees to review specific FOIA requests and to decide—pursuant to unelucidated criteria or standards—whether*

*to release responsive records to FOIA requesters.*  This practice is particularly concerning when one considers the history of improper political interference with EPA's FOIA procedures, and if permitted to stand, it will only intensify EPA's habit of adopting secret ways internally to undermine FOIA's purpose of government transparency and accountability to the public.

46.     EPA directs agency staff to implement the Awareness Notification Process when preparing records for release in response to any FOIA requests to EPA.  *Id.*

47.     Every week, the National FOIA office sends a list of select FOIA requests for review to the Political Appointees.  *Id.*  EPA has not explained its process for selecting FOIA requests for review by Political Appointees.  Since EPA has not published any explanation of this process in the Federal Register or through another electronic format, the review process is patently arbitrary and capricious and causes undue delay for FOIA requests.

48.     Under this directive, the Political Appointees alert the National FOIA Office Director about any new FOIA requests of interest within five days of the agency's receipt of the request. *Id.*

49.     Once a Political Appointee selects a particular FOIA request, the National FOIA Office indicates on the request that it will receive additional review.  *Id.*

50.     The Political Appointees receive "awareness notification email[s]" for any FOIA requests that they flag for notification.  *Id.*  The notification email includes, among other information, the FOIA request date, the name of the requester/organization, a description of the request, the number of records and pages of records that EPA staff plan to release to the requestor, links to those records, and a list of the offices that are associated with the records.  *Id.*

51.     Political Appointees have three business days to review the records that EPA staff plan to release and to provide feedback on those records.  *Id.*  EPA staff then have one business day to forward the agency's determination to the requester.  *Id.*

52.     The Awareness Notification Process adds at least three additional days to EPA's response time in processing FOIA requests.

53.     This delay impairs the ability of Plaintiffs and of all FOIA requestors to receive records responsive to their FOIA requests in a timely manner.

54.     As of the date of this complaint, EPA has not published any policies regarding its implementation of the Political Notification Process in the Federal Register or through other electronic means as required by 5 U.S.C. § 552(a)(1)-(2).

IV.     The Center's FOIA Requests and Subsequent Complaint Against EPA

55.     Since 2017, the Center has sent numerous FOIA requests to EPA that have been delayed at EPA's Headquarters FOIA Office.  At least 78 of those requests have been pending before EPA since 2016 and EPA has given no indication the agency will complete the requests anytime in the near future.  This lack of completion means that EPA's FOIA Rule and unpublished directives affect these 78 FOIA requests and all future requests the Center and EIP submit.

56.     These and other unanswered FOIA requests to EPA prompted the Center to submit a FOIA request to EPA on November 16, 2017 for records "that include, mention, and/or reference directives and/or policies that concern EPA responding to and/or processing requests and appeals pursuant to FOIA."  *Center's FOIA Action*, Complaint No. 1:19-cv-00688 at 6.

57.     On February 16, 2018, EPA sent a final determination in response to the Center's FOIA request directing the Center to look online at EPA's published FOIA policies and stating

that the Center's request was "full[y] granted." *Id.*  However, nowhere did EPA indicate that it *conducted a search* for records that are responsive to the Center's request, as FOIA requires. Moreover, EPA's unpublished FOIA directives were not made available online.

58.     The Center timely appealed EPA's final determination on May 14, 2018.  The Center's appeal challenged EPA's failure to conduct a search that was reasonably calculated to locate all records that are responsive to the Center's request, i.e., for all records that reference EPA's FOIA policies and not just the policies themselves. *Id.*

59.     On June 1 and June 4, 2018, EPA Headquarters sent "update" emails to the Center that assigned individual FOIA queue numbers and provided estimated completion dates for 32 of the Center's outstanding FOIA requests.  EPA assigned the Center's requests queue numbers in the hundreds and stated that determinations for each request likely would not be completed for at least a year. *Id.* at 7-8.

60.     On June 13, 2018, the Center submitted a FOIA request to EPA for "the complete list of FOIA requests currently in EPA's queue, as referenced in EPA's recent status update emails" and requesting expedited processing. *Id.* at 8.  On June 29, 2018, the Center asked EPA to advise how it manages its FOIA queue, (i.e., by list, formula, or other means). *Id.* at 8.

61.     EPA never responded to the Center with information about its policies or practices involving its FOIA queue or its queue management, nor did it communicate any "unusual circumstances" that prevented it from making a determination on the Center's request.

62.     On March 12, 2019, the Center filed a complaint against EPA for violating FOIA through its failure to promptly disclose and its improper withholding of records responsive to the Center's FOIA requests and its impermissible FOIA patterns, policies, and/or practices, and other issues related to the actions in this Complaint. *Id.* at 10-17.

14

63.     In response to the Center's lawsuit, EPA sent the Center a digital copy of the queue implemented through EPA's AO FOIA Centralization Pilot Project.  The Center did not receive any policies or insight regarding EPA's queue implementation.

64.     As of the date of this complaint, EPA has failed to send any records to the Center that concern its internal FOIA directives or publish for public viewing in the Federal Register or another electronic format, as required by 5 U.S.C. § 552(a)(1)-(2), any FOIA directives that EPA has adopted internally that impact the FOIA process.

65.     EPA's failure to respond to the Center's FOIA request from June 13, 2018 regarding EPA's FOIA queue follows EPA's improper pattern, policy, and practice of failing to make a timely determination on numerous other FOIA requests that the Center submitted.

66.     The Center is one of many requestors whose FOIA requests are listed in EPA's FOIA queue with a wait list number of 100 or greater, without any completion dates in sight. Because EPA has a long dossier of taking years to complete FOIA requests, EPA's FOIA queue indicates that the Center and myriad other requesters will likely receive stale records, irrelevant to their requests.  EPA's failure to send FOIA requesters responsive requests promptly, or at all, injures requesters by preventing them from advancing their mission for members and the public.

V.     EPA's Direct-to-Final FOIA Rule

67.     On June 26, 2019, EPA issued a direct-to-final rule—i.e., one published without first providing public notice of the proposed rule in the Federal Register and allowing for a public comment period before EPA finalized the rule.  *Freedom of Information Act Regulations Update*, 84 Fed. Reg. 30,028 (June 26, 2019) (hereinafter "FOIA Rule").

68.     The FOIA Rule revises EPA's FOIA regulations by changing EPA protocol for the process by which the public may request records that would illuminate EPA operations and

activities.  For instance, the FOIA Rule authorizes political appointees to review and filter

responsive records to FOIA requests; authorizes EPA to withhold responsive records or portions

of responsive records when staff complete FOIA requests; and only initiates the statutory time

requirement for EPA to respond to FOIA requests once EPA officially receives the request

through its centralized portal.  Yet even this list does not include all the substantive changes in

EPA's FOIA Rule—changes in which Plaintiffs and the public have a substantial stake.

69.     EPA published its FOIA Rule without a 30-day notice-and-comment period by

improperly applying the procedural and good-cause exceptions of the APA § 553(b)(3)(B).  EPA

asserted that "[n]otice and opportunity for comment was unnecessary because the agency lacks

discretion to reach a different outcome in response to comment," and that public discussion of

this rulemaking is "impracticable, unnecessary, or contrary to the public interest," and

characterized its changes to the rule as "minor and purely ministerial changes" within the scope

of the procedural exemption.  84 Fed. Reg. at 30,029.

70.     EPA further claims that the changes it made in its FOIA Rule were "self-

executing" and statutorily directed, and baldly claimed that they do not alter the "substantive

standards the Agency applies in implementing the FOIA to the extent they conform with the Act

and the 2007, 2009, and 2016 Amendments."  *Id.*

71.     Congress enacted amendments to FOIA in 2007, 2009, and 2016.  *Id.* at 30,028.

The 2007 amendments addressed several of FOIA's procedural issues that concern FOIA

administration.  *Id.* at 30029.  The 2009 amendments revised the requirements of FOIA

Exemption 3, regarding records exempt from disclosure by other statutes.  *Id.*  Congress's 2016

FOIA amendments address "procedural and substantive issues."  *Id.*

72.     EPA's changes are patently substantial.  While EPA claims that it "has not *substantively* updated these regulations since 2002," *id.* (emphasis added), the agency's explanation of the new FOIA Rule all but admits that EPA is implementing procedural *and* substantive changes with its FOIA Rule.

73.     EPA's FOIA Rule changes the process by which records requesters submit requests to EPA.  Specifically, EPA "will no longer accept FOIA requests sent to (1) any office by facsimile; (2) any office by email; or (3) Regional FOIA Offices by U.S. mail or other non-electronic means," and "[r]equests submitted by one of these three methods will not trigger the statutory time-periods for response or the tolling provisions of [FOIA]."  84 Fed. Reg. at 30,030. Additionally, "[i]f a requester . . . submits a FOIA request to an EPA program or regional office, the EPA will not consider the request received by the Agency."  *Id.*

74.     If a requester submits a FOIA request through one of the three newly prohibited methods, EPA's FOIA Rule does not say whether it will inform the requester of any infirmities, let alone provide an opportunity for the requester to appeal of EPA's constructive denial of the request.  *Id.*  EPA's FOIA Rule fails to indicate whether it will provide the requester with instructions on the official methods to submit FOIA requests.  *Id.*

75.     EPA's new FOIA Rule amounts to a significant and improper reversal in the agency's FOIA policy, allowing EPA political appointees to decide whether to release records to a FOIA requester, including whether their own records are "responsive" to FOIA requests.  *Id.*

V.     <u>EPA's Use of the Good Cause Exception to APA Notice-and-Comment Rulemaking</u>

76.     Within the last 365 days, EPA has published 17 direct-to-final rules by invoking the good cause exception of APA § 553(b)(B), claiming that "public notice and comment

procedures [were] impracticable" or "impractical, unnecessary, or contrary to public interest" for each rule, *see e.g.*, 84 Fed. Reg. at 30,029, with varying justifications for using the exception.

77.     Upon information or belief, EPA did not publish any of these "direct-to-final" rules with notice-and-comment under any court order or statutory directive.  The rules include substantive changes for which the ability for the public to comment would be practicable and necessary, further the letter and spirit of the law, and align with the public interest:

a.     Approval and Promulgation of Air Quality Implementation Plans; West Virginia; Revised Motor Vehicle Emission Budgets for the Charleston, Huntington, Parkersburg, Weirton, and Wheeling 8-Hour Ozone Maintenance Areas; Correction, 83 Fed. Reg. 32,062, 32,063 (July 11, 2018);

b.     Addition of Subsurface Intrusion Component to the Hazard Ranking System; Corrections, 83 Fed. Reg. 38,036, 38,036-37 (Aug. 3, 2018);

c.     Address Change for Waste Import-Export Submittals From the Office of Federal Activities to the Office of Resource Conservation and Recovery, 83 Fed. Reg. 38,262, 38,262 (Aug. 6, 2018);

d.     Significant New Use Rules on Certain Chemical Substances; Withdrawal, 83 Fed. Reg. 48,544, 48,546 (Sept. 26, 2018);

e.     Approval and Promulgation of Air Quality Implementation Plans; District of Columbia; Update to Materials Incorporated by Reference, 83 Fed. Reg. 50,010, 50,011 (Oct. 4, 2018);

f.     Approval and Promulgation of Air Quality Implementation Plans; Delaware; Update to Materials Incorporated by Reference, 83 Fed. Reg. 50,012, 50,013 (Oct. 4, 2018);

g.     Approval and Promulgation of Air Quality Implementation Plans; West Virginia; Update to Materials Incorporated by Reference, 83 Fed. Reg. 52,772, 52,772 (Oct. 18, 2018);

h.     Findings of Failure to Submit Complete State Implementation Plans Required for the 1997, 2006, and 2012 $PM_{2.5}$NAAQS; California; San Joaquin Valley, 83 Fed. Reg. 62,720, 62,721 (Dec. 6, 2018);

i.     Air Plan Approval; WA; Updates to Materials Incorporated by Reference, 84 Fed. Reg. 2,738, 2,740 (Feb. 8, 2019);

j.     Removal of the Reformulated Gasoline Program From the Northern Kentucky Portion of the Cincinnati-Hamilton Ozone Maintenance Area, 84 Fed. Reg. 2,453, 2,454 (Feb. 7, 2019);

k.     Air Plan Approval; South Carolina; Update to Materials Incorporated by Reference, 84 Fed. Reg. 10,687, 10,688 (Mar. 22, 2019);

l.     Approval and Promulgation of Air Quality Implementation Plans; Pennsylvania; Delegation of Authority of the Federal Plan for Existing Sewage Sludge Incineration Units, 84 Fed. Reg. 15,961, 15,962 (Apr. 17, 2019);

m.     Air Plan Approval; Oregon; Update to Materials Incorporated by Reference, 84 Fed. Reg. 14,272, 14,273 (Apr. 10, 2019);

n.     Air Plan Revisions; California; Correcting Amendments, 84 Fed. Reg. 19,680, 19,680 (May 3, 2019);

o.     Approval and Promulgation of Air Quality Implementation Plans; Maryland; Reasonably Available Control Technology for Cement Kilns, Revisions to Portland Cement Manufacturing Plant and Natural Gas Compression Station Regulations, and Removal of Nitrogen Oxides Reduction and Trading Program Replaced by Other Programs and Regulations; Correction, 84 Fed. Reg. 20,808, 20,808 (May 13, 2019);

p.     Freedom of Information Act Regulations Update, 84 Fed. Reg. 30,028, 30,029 (June 26, 2019) (previously cited)[1];

q.     Marine Protection, Research, and Sanctuaries Act (MPRSA) Regulations and Disposal Sites Designated Under the MPRSA; Technical Amendments, 84 Fed. Reg. 31,512, 31,513 (July 2, 2019)[2];

78.     Plaintiffs have been required to expend resources investigating EPA's FOIA and APA violations and to prosecute these actions.

---

[1] EPA invoked the APA's procedural exception, § 553(b)(3)(A), in addition to the APA's good cause exception, § 553(b)(3)(B). However, the rule's amendments include substantive changes to which the procedural exception and the good cause exception do not apply.

[2] EPA invoked the APA's procedural exception, § 553(b)(3)(A), in addition to the APA's good cause exception, § 553(b)(3)(B). However, the rule's amendments include substantive changes to which the procedural exception and the good cause exception do not apply.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

EPA Failed to Follow FOIA's Rulemaking Procedures in Adopting FOIA Directives

79.     Plaintiffs re-allege and incorporate by reference the allegations made in all preceding paragraphs.

80.     EPA adopted several FOIA directives described above that substantively alter its processes and practices that impact all FOIA requesters, including Plaintiffs, without first providing notice through publication of the proposed directives and affording an opportunity for public comment.

81.     EPA's adoption of unpublished substantive FOIA directives violates FOIA's rulemaking procedures.  5 U.S.C. § 552(a)(1)(D).

82.     Plaintiffs have a statutory right to receive notice and provide comment on EPA's substantive rules of general applicability, including its FOIA directives, because the changes affect the way Plaintiffs interact with EPA, on behalf of their members and the public.  5 U.S.C. § 552(a)(1)(D).

83.     EPA's failure to make its FOIA directives available for public inspection violates FOIA's rulemaking procedures.  *Id.* § 552(a)(2)(B)-(C).

84.     EPA's failure to provide notice and comment and/or publish its FOIA directives adversely affect Plaintiffs because it prevents EPA from fulfilling its transparency obligations to Plaintiffs and prevents Plaintiffs from providing feedback on EPA's directives that directly affect access agency records under FOIA and, therefore, deprive Plaintiffs of rights under FOIA.

85.     Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, EPA will continue to violate Plaintiffs' rights under FOIA.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

Violations of the APA's Rulemaking Requirements

COUNT ONE: EPA Failed to Provide Notice and Opportunity for Comment on Its FOIA
Directives

86.     Plaintiffs re-allege and incorporate by reference the allegations made in all

preceding paragraphs.

87.     Plaintiffs are entitled to judicial review under the APA, 5 U.S.C. § 702.

88.     EPA adopted the unpublished FOIA directives without providing any notice

through publication in the Federal Register or an opportunity for interested parties to comment

on the procedural and substantive changes that directly and indirectly affect them.

89.     EPA's unpublished FOIA directives bind EPA and parties like Plaintiffs with the

"force of law" of regulations and are, thus, not merely policy statements.

90.     Plaintiffs have a statutory right to receive notice and the opportunity to comment

on EPA's FOIA directives, 5 U.S.C. § 553(b), as the directives substantively change EPA's

interactions with Plaintiffs and other FOIA requesters.

91.     EPA violated Plaintiffs' rights in this regard by adopting the FOIA directives

without providing notice or opportunity for comment.

92.     EPA's failure to provide notice and opportunity for comment on its FOIA

directives, which make substantive changes to the agency's FOIA practices, violates the APA.  5

U.S.C. § 553(c).

93.     EPA's adoption of FOIA directives without notice and comment harms Plaintiffs

because EPA's FOIA directives fundamentally alter how EPA will process FOIA requests,

unilaterally change the rules which Plaintiffs must abide by in order to obtain information that

will further their missions, and will cause significant delay in Plaintiffs' ability to communicate with EPA, receive records responsive to FOIA requests, and ultimately to inform their members and the public.

94.     Unless made subject to a declaration of Plaintiffs' legal rights by this Court, vacated, and enjoined, EPA will continue to violate Plaintiffs' rights to receive public records under FOIA.

95.     Plaintiffs have no other adequate remedy at law to redress these violations.

COUNT TWO: EPA Failed to Provide Notice and Opportunity for Comment its FOIA Rule

96.     Plaintiffs re-allege and incorporates by reference the allegations made in all preceding paragraphs.

97.     Plaintiffs are entitled to judicial review under the APA, 5 U.S.C. § 702.

98.     EPA violated the APA by publishing its direct-to-final FOIA Rule without providing Plaintiffs or any other interested parties the opportunity to provide feedback on the substantive rule changes that directly and indirectly affect them.  5 U.S.C. § 553(c).

99.     None of the APA's statutory exceptions to notice and comment rulemaking apply to EPA's Final FOIA Rule because EPA adopted both procedural *and* substantive amendments to its FOIA regulations.  5 U.S.C. § 553(b).

100.    Because EPA's direct-to-final FOIA Rule includes substantive changes, it is, therefore, practicable, necessary, and directly aligned with the public interest to request feedback from interested parties.  5 U.S.C. § 553(b)(B).

101.    None of the APA's exceptions, including the good-cause exception, apply to EPA's direct-to-final FOIA Rule.  5 U.S.C. § 553(b).

102.    Plaintiffs have a statutory right to notice of EPA's substantive regulatory changes and provide comment on amendments that affect Plaintiffs' ability to fulfill its core mission on behalf of its members and the public.  5 U.S.C. § 553(c).

103.    EPA's use of the APA's good cause exception to publish its Final FOIA Rule without notice-and-comment harms Plaintiffs because the FOIA Rule's substantive changes alter the process by which Plaintiffs submit FOIA requests to EPA.

104.    Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by the Court, EPA will continue to violate Plaintiffs' rights to provide feedback on EPA's final FOIA rule, effective July 26, 2019. 84 Fed. Reg. at 30,028.

105.    Plaintiffs have no other adequate remedy at law to redress these violations.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT

### EPA's New FOIA Rule is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with the Law

106.    Plaintiffs re-allege and incorporate by reference the allegations made in all preceding paragraphs.

107.    Plaintiffs are entitled to judicial review under the APA, 5 U.S.C. § 702.

108.    EPA's FOIA Rule was published without a notice-and-comment period and is therefore arbitrary, capricious, an abuse of discretion, or otherwise contrary to FOIA, 5 U.S.C. § 552(a)(1), in violation of the APA, 5 U.S.C. § 706(2)(A).

109.    EPA's FOIA Rule violates FOIA by allowing specific non-career EPA officials to issue final determinations on FOIA requests, including whether to release or withhold a record or a portion of a record on the basis of responsiveness or under one or more exemptions under the FOIA, and to issue "no records" responses.  *Id.* §§ 552(a)(1), 553(c).

23

110.    FOIA requires that upon request, EPA must provide agency records to a requester, unless one (or more) of nine narrow statutory exemptions apply.  *Id.* §§ 552(a)(3)(A), 552(b)(1)-(9).  FOIA does not allow any agency to withhold a record or portion of a record on the basis of responsiveness.

111.    EPA's violations of FOIA and the APA harm Plaintiffs because Plaintiffs will continue to employ FOIA's provisions to request records from EPA, and EPA's FOIA rule will impair Plaintiffs' ability to obtain agency records containing information about EPA's operations and activities, on behalf of its members and the public.

112.    Unless set aside and made subject to a declaration of Plaintiffs' legal rights by this Court, EPA will continue to violate Plaintiffs' rights to work with agencies that act in accordance with the APA.

113.    Plaintiffs have no other adequate remedy at law to redress these violations.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF ADMINISTRATIVE PROCEDURE ACT**

EPA's Impermissible, Pattern, Policy, and/or Practice of Adopting Unpublished Directives that
Substantively Alter its FOIA Program and Lead to Significant Delay

114.    Plaintiffs re-allege and incorporate by reference the allegations made in all preceding paragraphs.

115.    Plaintiffs are entitled to judicial review under the APA, 5 U.S.C. § 702.

116.    EPA violated the APA by its unlawful pattern, policy, and/or practice of adopting internal rules and directives that substantively change its FOIA management, among other management policies, without notifying the public and offering the public opportunity to comment and result in unreasonable delay.  5 U.S.C. § 706(2).

24

117.     The APA's exceptions do not apply to these unpublished FOIA directives because they include substantive changes that affect Plaintiffs and their members, and the public, and create unreasonable delays in EPA's FOIA responses to Plaintiffs.  5 U.S.C. § 553(c).

118.     The opportunity to be made aware of and provide comment on these unpublished FOIA directives is practicable, necessary, and aligns with public interest.  5 U.S.C. § 553(b)(B).

119.     Plaintiffs have a statutory right to know about and provide input on any of EPA's unpublished FOIA rules and policy directives that substantively affect Plaintiffs and Plaintiffs' work on behalf of their members.

120.     EPA's impermissible patterns, policies, and/or practices harm Plaintiffs' ability to effectively communicate with EPA and delay EPA's responses to Plaintiffs' FOIA requests.

121.     Unless enjoined and made subject to a declaration of Plaintiffs' legal rights by this Court, EPA will continue to violate Plaintiffs' right to know of and provide input on EPA's FOIA directives.  Additionally, EPA will continue to engage in practices that affect its FOIA practices and cause unreasonable delay under FOIA and adopt internal policies, about which it will not alert Plaintiffs or the public, or provide any opportunity to comment.

122.     Plaintiffs have no other adequate remedy at law to redress these violations.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1.     Declare that EPA's failure to follow rule-making procedures for the Final Rule "Freedom of Information Act Regulations Update" violates FOIA, 5 U.S.C. § 552(a)(1)(D).

2.     Declare that EPA's FOIA directives are substantive rules of general applicability, and that EPA's failure to provide notice and opportunity for comment on its unpublished FOIA rules and directives violates the APA, 5 U.S.C. § 553(c).

3.      Declare that EPA's Final Rule "Freedom of Information Act Regulations Update" is a substantive rule, and that EPA's failure to provide notice and an opportunity for comment on a substantive rule violates the APA.  5 U.S.C. § 553(b)(B).

4.      Declare that EPA's direct-to-final rule publication of "Freedom of Information Act Regulations Update" is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA.  5 U.S.C. § 706(2)(A).

5.      Declare that EPA's repeated adoption of unpublished policies that substantively change its FOIA program and that cause significant delay in responding to FOIA requests is an impermissible pattern, policy, and/or practice that violates the APA.  5 U.S.C. § 706(2).

6.      Declare that EPA's significant delay in responding to FOIA requests is an impermissible pattern, policy, and/or practice that violates the APA.  5 U.S.C. § 706(2)(X).

7.      Vacate EPA's amendments to its FOIA regulations, 84 Fed. Reg. at 30,028-38, pursuant to 5 U.S.C. § 553(c).

8.      Vacate EPA's substantive FOIA rules and/or directives that are contrary to FOIA and that EPA did not publish in the Federal Register as a proposed rule with a 30-day notice-and-comment period.

9.      Vacate EPA's FOIA Rule and its other FOIA rules and policy directives unless and until it follows the proper rulemaking procedures set forth in the APA.  5 U.S.C. § 553(c).

10.      Award Plaintiffs costs and reasonable attorney fees pursuant to *Id*. § 552(a)(4)(E) and 28 U.S.C. § 2412.

11.      Grant such other and further relief as the Court may deem just and proper.

DATED: July 24, 2019                   Respectfully submitted,

                                       */s/ Margaret E. Townsend*
                                       Margaret E. Townsend (DC Bar No. OR0008)
                                       Amy R. Atwood (D.C. Bar No. 470258)
                                       P.O Box 11374
                                       Portland, OR 97211-0374
                                       (971) 717-6409
                                       mtownsend@biologicaldiversity.org

                                       *Attorneys for Plaintiff*